# In the United States Court of Federal Claims

### No. 15-165C
### Filed: June 21, 2016

```
* * * * * * * * * * * * * * * **    *
                                    *
VINCENT E. BARNA,                   *
                                    *
            Plaintiff,              *    Military Pay; Promotion; Motion to
                                    *    Dismiss for Failure to State a Claim;
                                    *    Cross-Motions for Judgment on the
       v.                           *    Administrative Record; Motion to
                                    *    Supplement the Administrative
UNITED STATES,                      *    Record.
                                    *
            Defendant.              *
* * * * * * * * * * * * * * * **    *
```

**Eric S. Montalvo**, The Federal Practice Group Worldwide Service, Washington, D.C. for plaintiff.

**Christopher L. Harlow**, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant. With him were **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Civil Division, and **Robert E. Kirschman**, **Jr.**, Director, Commercial Litigation Branch, Washington, D.C. Of counsel was **Steven Gonzales**, Lieutenant Commander, United States Navy, Office of the Judge Advocate General, Washington, D.C.

### O P I N I O N

<u>**HORN, J.**</u>

### FINDINGS OF FACT

In the above-captioned case, Mr. Vincent Barna seeks "military pay and benefits, military separation pay and benefits, and correction of military records" based on what he alleges was a wrongful discharge from the United States Marine Corps. Mr. Barna enlisted in the Marine Corps on August 30, 2000 and entered active duty on November 29, 2000. Between 2003 and 2006, Mr. Barna served three combat tours in Iraq. In October 2005, Mr. Barna was accepted to attend the Marine Enlistment Commissioning Education Program (MECEP), which allows selected enlisted Marines the opportunity to earn a bachelor's degree and a commission as an officer in the Marine Corps. As part of the MECEP program, Mr. Barna began attending California State University at San Marcos in August 2006 as a full time student, where he was attached to the Naval Reserve Officers Training Corps (NROTC) unit affiliated with the University of San Diego and San Diego State University. Mr. Barna was promoted from Sergeant to Staff Sergeant on March 1, 2008, while he was attending the MECEP program.

On February 3, 2010, Mr. Barna was arrested for driving under the influence of alcohol (DUI) in San Marco, California, which set in motion the events leading to his discharge and the present lawsuit. According to the police report of the California Highway Patrol, at approximately 1:53 a.m. on February 3, 2010, Mr. Barna's vehicle was stopped by a California Highway Patrol officer after the officer observed Mr. Barna speeding and "having a difficult time maintaining proper roadway position." Upon approaching Mr. Barna's vehicle, the officer noticed that Mr. Barna's eyes were bloodshot and that he had an unusually large amount of tobacco in his mouth. Despite the strong smell of tobacco, the officer could smell alcohol in the vehicle. The officer proceeded to administer four field sobriety tests to Mr. Barna, on all of which Mr. Barna performed poorly. The officer then administered a preliminary alcohol screening device two times, which showed Mr. Barna's blood alcohol level as 0.186% and 0.181%. Believing, as a result of these tests, that Mr. Barna had been driving under the influence of alcohol, the officer placed Mr. Barna under arrest.

After being informed he was under arrest, Mr. Barna stated to the officer: "Sir, can we just call my girlfriend to come and pick me up? I'm a Marine sir. I attend Cal State San Marcos and am going to become an officer very soon." The officer informed Mr. Barna that he could not do what Mr. Barna was asking and placed Mr. Barna in his patrol vehicle to take to a detention facility. While on route to the facility, Mr. Barna, unprompted, asked the officer about the legal process he would face, and, after the officer began to describe the arraignment process, Mr. Barna interrupted him to sarcastically ask: "And that's when I use my lawyer to come up with something fictitious to beat this right? This is beatable." After arriving at the booking facility, the arresting officer administered two more breath tests on Mr. Barna at 2:45 a.m. and 3:00 a.m., which both showed a blood alcohol level of 0.15%. According to the officer, Mr. Barna also stated that his brother was a sheriff and that he was confident he could beat the charge.

On the day of his arrest, February 3, 2010, Mr. Barna notified his command that he had been arrested for a DUI. On February 23, 2010, Mr. Barna received notification that the commander of his NROTC was offering him Non-Judicial Punishment for the DUI. Non-Judicial Punishment is a disciplinary measure more serious than administrative corrective measures imposed by military commanders, such as counseling, admonitions, reprimands, exhortations, disapprovals, criticisms, censures, reproofs, rebukes, extra military instruction, and administrative withholding of privileges, but less serious than trial by court-martial. See Manual for Courts-Martial, Part V, ¶ 1.B (2008). Subject to the applicable regulations, a commander may impose Non-Judicial Punishment upon any military personnel under his or her command for any act or omission that he or she determines to be a "minor" offense, ordinarily those for which the maximum sentence imposable at a court-martial would not include a dishonorable discharge or confinement for longer than one year. See id. at Part V, ¶¶ 1.e, 2.a. On March 19, 2010, Mr. Barna refused Non-Judicial Punishment and instead elected to face a court-martial. Such a refusal results in the automatic termination of Non-Judicial Punishment proceedings. See id. at Part V, ¶ 4.b(1) ("If the servicemember demands trial by court-martial (when this right is applicable), the nonjudicial proceedings shall be terminated.").

In a letter dated April 8, 2010, the commanding officer of Mr. Barna's NROTC unit informed Mr. Barna that, on April 16, 2010, a Performance Review Board would be held to investigate and make recommendations on Mr. Barna's "failure to maintain standards as a student in the MECEP Program."[1] The April 8, 2010 letter informed Mr. Barna that, at the Performance Review Board, he would have the right to appear before the Board, submit statements and present documents on his own behalf, and review his personnel file. The letter also informed Mr. Barna that the possible outcomes the Performance Review Board could recommend to his commanding officer were either no action, a warning, probation, or disenrollment form the MECEP. The Performance Review Board hearing was held on April 16, 2010 with Mr. Barna and his attorney present. At the conclusion of the Performance Review Board hearing, the Performance Review Board members unanimously voted to recommend to Mr. Barna's commanding officer that he be disenrolled from the MECEP program. On May 10, 2010, the commanding officer of Mr. Barna's NROTC unit endorsed the Performance Review Board's recommendation, and, on September 8, 2010, the Commander of the Naval Services Training Command did the same. On September 27, 2010, Mr. Barna was disenrolled from the MECEP program. Concurrently with his disenrollment, Mr. Barna was demoted from Staff Sergeant to Sergeant in accordance with Marine Corps Order P1400.32D. After the Performance Review Board's recommendation that Mr. Barna be disenrolled from MECEP, he was reassigned to Marine Corps Recruit Depot (MCRD), San Diego, and on June 1, 2010, Mr. Barna reported to Headquarters and Service Battalion, MCRD, San Diego, then under the command of Col. Stephanie Smith, United States Marine Corps.

On July 15, 2010, two charges for violations of Articles 107 and 111 of the Uniform Code of Military Justice (UCMJ), both arising out of the February 3, 2010 DUI incident, were preferred against Mr. Barna.[2] On August 10, 2010, Col. Smith referred the same

---

[1] A Performance Review Board is an "administrative tool," which a commanding officer may use in order to "investigate, review, and document recommendations regarding the best course of action to be taken to ensure successful fulfillment of program requirements by students enrolled in any OD [Officer Development] Program [including the MECEP program]." Commander Naval Service Training Command (CNSTC) Instruction 1533.2 ¶ 710.a (July 2, 2007). "[A] PRB [Performance Review Board] is not a judicial proceeding, but rather an informal administrative hearing most similar to a university academic review board." Id. ¶ 710.b.

[2] Preferral of charges is part of the pretrial process in the military criminal justice system. "Charges are formally filed or 'preferred' when reduced to writing onto a charge sheet and sworn to by an accuser before a commissioned officer authorized to administer the oath." Diaz v. United States, 54 M.J. 880, 882 (Navy-Marine Corps Ct. Crim. App. 2000) (citing UCMJ, Art. 30; Manual for Courts-Martial, Part II, Rules for Courts-Martial (RCM), Rule 307(b)). "Upon the preferring of charges, the proper authority shall take immediate steps to determine what disposition should be made thereof in the interest of justice and discipline, and the person accused shall be informed of the charges against him as soon as practicable." UCMJ, Art. 30(b). After a court-martial has been convened, this authority is referred to as the "convening authority." See RCM 601(b). If the convening authority determines that there are "reasonable grounds to believe that an offense triable by a

two charges against Mr. Barna to a special court-martial.[3] The charges alleged that Mr. Barna had violated UCMJ Article 107 by making a false statement during the Performance Review Board hearing and UCMJ Article 111 by driving drunk and recklessly, while on active duty, on February 3, 2010. The version of Article 107 in place during the relevant period, titled "False official statements," stated: "Any person subject to [the UCMJ] who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct." UCMJ, Art. 107 (2006). The version of Article 111 in place during the relevant period, titled "Drunken or reckless operation of a vehicle, aircraft, or vessel," stated, in relevant part:

> Any person subject to [the UCMJ] who . . . operates or is in actual physical control of any vehicle, aircraft, or vessel while drunk or when the alcohol concentration in the person's blood or breath is equal to or exceeds the applicable limit [the lesser of the blood alcohol content limit under the law of the State in which the conduct occurred, 0.10 grams of alcohol per 100 milliliters of blood, or 0.10 grams of alcohol per 210 liters of breath], shall be punished as a court-martial may direct.

---

court-martial has been committed and that the accused committed it," then he or she may "refer" the charges against the accused to a court-martial. RCM 601(d)(1). "Referral is the order of a convening authority that charges against an accused will be tried by a specified court-martial." RCM 601(a). In the present case, Col. Smith was the convening authority who referred the charges against Mr. Barna to a court-martial.

[3] A special court-martial is one of the three kinds of courts-martial in the United States military justice system, the other two being general courts-martial and summary courts-martial. See UCMJ, Art. 16 (2012). The three forms of courts-martial differ in the composition of their presiding officers and jurisdiction. See id. Special courts-martial are composed of either: "**(A)** not less than three members; or **(B)** a military judge and not less than three members; or **(C)** only a military judge, if one has been detailed to the court, and the accused [under certain conditions] so requests." Id. at Art. 16(1) (emphasis in original). Special courts-martial have jurisdiction to try military service members:

> for any noncapital offense made punishable by [the UCMJ] and, under such regulations as the President may prescribe, for capital offenses. Special courts-martial may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by [the UCMJ] except death, dishonorable discharge, dismissal, confinement for more than one year, hard labor without confinement for more than three months, forfeiture of pay exceeding two-thirds pay per month, or forfeiture of pay for more than one year. . . .

Id. at Art. 19.

Id. at Art. 111(a).

On September 2, 2010, Mr. Barna and his defense attorney signed a Pre-Trial Agreement, which was subsequently signed and approved by Col. Smith on September 29, 2010. In the first paragraph of the Pre-Trial Agreement, Mr. Barna agreed to the following:

> 1. For good consideration and after consultation with my defense counsel, I agree to enter a plea of <u>GUILTY</u> to the charges and specifications listed below at NONJUDICIAL PUNISHMENT, provided the convening authority agrees to withdraw the charges and specifications made against me at a pending special court-martial.

(emphasis and capitalization in original). In paragraph 8 of the Pre-Trial Agreement, Mr. Barna agreed to plead guilty to a violation of UCMJ Article 111 and the following specification for that charge:

> In that Staff Sergeant Vincent E. Barna, United States Marine Corps, while on active duty, did, on or about 3 February 2010, on eastbound State Route 76 at or near San Marcos, CA, physically control a vehicle, to wit: a passenger car, in a reckless manner by following closely behind other vehicles at an excessive rate of speed, aggressively changing lanes without using a turn signal, and swerving over the roadway shoulder line.

The Pre-Trial Agreement noted that Mr. Barna agreed to plead "Guilty to the specification as charged and Guilty to the additional language 'which was done with alcohol involvement.'" In the Pre-Trial Agreement, Mr. Barna also stated that he would plead not guilty to the charge that he violated UCMJ Article 107 by making a false statement at the Performance Review Board and to additional specifications to the Article 111 violation that, on February 3, 2010, he drove a car while drunk and with the alcohol concentration in his breath above California's legal limit. In paragraphs 9 through 12 of the Pre-Trial Agreement, Mr. Barna also agreed to the following statements:

> 9. I understand that in return for my plea of guilty, the convening authority agrees to refer the charges and specifications to which I will plead guilty to nonjudicial punishment. I understand and agree that, in return for my accepting NJP [Non-Judicial Punishment], the convening authority will withdraw the charges and specifications from court martial. After the announcement of the punishment by the non-judicial punishment officer, the withdrawn charges and specifications will be dismissed by the convening authority with prejudice.

> 10. I agree to waive any administrative discharge board, based on any act or omission reflected in the charges and specifications that are the subject of this Agreement. I understand that the Convening Authority will recommend an Honorable Discharge, but that any administrative discharge will be imposed by the Separation Authority, and may be under other than

honorable conditions. I fully understand the nature and purpose of an Administrative Discharge Board, and the rights that I would have at such a Board.

11. It is expressly understood that I will not commit any act of misconduct chargeable under the Uniform Code of Military Justice between the date both parties have signed this agreement and the date of nonjudicial punishment. Any act or misconduct on my part after both parties have signed this agreement and before the date of nonjudicial punishment will be grounds for withdrawal from this agreement by the convening authority.

12. This Agreement constitutes all the conditions and understandings of both the Government and myself regarding the pleas and sentence limitations in this case. There are no other agreements, oral or written, expressed or implied, between myself and the convening authority or any other representative of the government.

On September 21, 2010, Mr. Barna pled guilty in civilian court in California to a single count of reckless driving arising out of the February 3, 2010 DUI incident. Notably, the plea agreement signed by Mr. Barna and accepted by the court did not include any mention of alcohol, but instead specifically stated that Mr. Barna was pleading guilty to a "Dry" reckless driving charge and that all other charges would be dismissed.

On October 1, 2010, Mr. Barna agreed to accept Non-Judicial Punishment. The Non-Judicial Punishment was based on three offenses, the Article 111 reckless driving charge covered by the Pre-Trial Agreement (Mr. Barna's agreement to plead guilty to the charge "with alcohol involvement" was not included in the Non-Judicial Punishment document) and two additional offenses under UCMJ Articles 86 and 92. The version of UCMJ Article 86 in place during the period at issue, titled "Absence without leave," stated:

Any member of the armed forces who, without authority--

**(1)** fails to go to his appointed place of duty at the time prescribed;

**(2)** goes from that place; or

**(3)** absents himself or remains absent from his unit, organization, or place of duty at which he is required to be at the time prescribed;

shall be punished as a court-martial may direct.

UCMJ, Art. 86 (2006). The version of Article 92 in place during the period at issue, titled "Failure to obey order or regulation," states:

Any person subject to [the UCMJ] who--

**(1)** violates or fails to obey any lawful general order or regulation;

6

**(2)** having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the order; or

**(3)** is derelict in the performance of his duties;

shall be punished as a court-martial may direct.

Id. at Art. 92. The Navy and Marine Corps Form 10132 completed for Mr. Barna's Non-Judicial Punishment described his offenses as follows:

> Article 86: In that Sergeant Vincent E. Barna . . . did, on board Marine Corps Recruit Depot, San Diego, California, on or about 2 September 2010, without authority, fail to go at the time prescribed to his appointed place of duty, to wit: his assigned duty at the mandated 0730 muster at Building 15, Headquarters and Service Battalion, Marine Corps Recruit Depot, San Diego.

> Article 92: In that Sergeant Vincent E. Barna . . . having knowledge of a lawful order issued by Headquarters and Service Battalion, Commanding Officer to attend (5) aftercare meetings per week, an order which it was his duty to obey, did on or about August 2010, fail to obey the same by only attending (3) aftercare meetings a week.

> Article 111: In that Sergeant Vincent E. Barna . . . did, on or about 3 February 2010, on eastbound State Route 76 at or near San Marcos, CA, physically control a vehicle, to wit: a passenger car, in a reckless manner by following closely behind other vehicles at an excessive rate of speed, aggressively changing lanes without using a turn signal, and swerving over the roadway shoulder line.

As punishment, on October 1, 2010, Col. Smith ordered that Barna be reduced in rank to Corporal, forfeit $2,200.00 in pay, and be travel restricted with extra duty for forty-five days. Col. Smith suspended for six months all of these punishments except $800.00 of the pay forfeiture. In agreeing to accept the Non-Judicial Punishment, Mr. Barna signed the following statement, as well as circled or struck through portions of the text, as indicated below:

> I have been advised of and understand my rights under Article 31, UCMJ. I also have been advised of and understand my right to demand trial by court martial in lieu of non-judicial punishment. I (do) (do not) [circled] demand trial and (will) [circled] (will not) accept non-judicial punishment subject to my right of appeal. I further certify that I (have) [circled] (have not) been given opportunity to consult with a military lawyer, proved at no expense to me, prior to my decision to accept non-judicial punishment.

On October 15, 2010, as was agreed to in Article 10 of the Pre-Trial Agreement, Col. Smith recommended Mr. Barna be honorably discharged from the Marine Corps. In particular, Col. Smith sent a memorandum to the Commanding General of MCRD, San

Diego, recommending that Mr. Barna "be separated with an Honorable characterization of service . . . by reason of misconduct, specifically Commission of a Serious Offense." Col. Smith further wrote that "[t]he factual basis for this recommendation is Sergeant Barna's unlawful operation of a motor vehicle while under the influence of alcohol" on February 3, 2010. Col. Smith also, wrote, however, that "[i]n deference to his [Mr. Barna's] three combat tours and otherwise meritorious service, a[n] honorable characterization of service is appropriate." On the same day, October 15, 2010, Col. Smith provided Mr. Barna with a Notification of Administrative Separation stating that she was processing Mr. Barna for administrative separation by reason of misconduct.

On November 15, 2010, the Staff Judge Advocate reviewed Col. Smith's separation request and, after finding that Col. Smith's request was "sufficient in law and fact to support administrative separation," also recommended that Mr. Barna be given an honorable discharge. In doing so, the Staff Judge Advocate noted that on October 15, 2010, Mr. Barna had waived his right to an administrative separation board hearing. On November 16, 2010, the Commander of MCRD, San Diego agreed with Col. Smith's separation recommendation and ordered that Mr. Barna be separated "as soon as possible with an honorable characterization of service." On November 19, 2010, Mr. Barna was separated from the military. The Department of Defense Form 214 memorializing Mr. Barna's separation stated that Mr. Barna had been honorably discharged and that the reason for the separation was "MISCONDUCT." (capitalization in original). The November 19, 2010 Order separating Mr. Barna stated that his unused leave totaled 64.5 days.

During the time he was being processed for separation from the Marine Corps, Mr. Barna was selected for consideration by the Enlisted Remedial Selection Board (ERSB). The ERSB is "an advisory board that provides advice to the Commandant of the Marine Corps on Staff Noncommissioned Officer remedial promotion cases." Marine Corps Order (MCO) 5420.16D, para. 3 (Nov. 2, 2008). The ERSB ultimately recommended Mr. Barna's promotion from Sergeant to Staff Sergeant, backdated to March 1, 2008, the date of Mr. Barna's original promotion to Staff Sergeant. This recommendation was approved on December 13, 2010.

On July 10, 2012, Mr. Barna filed an "APPLICATION FOR RELIEF AND CORRECTION OF NAVAL RECORDS" with the Board of Correction for Naval Records (the BCNR). (capitalization in original). The application was submitted on behalf of Mr. Barna by an attorney from the same law firm that represents him in the present litigation. In his application, Mr. Barna requested the following relief:

> [T]he following changes to his DD214: 1) the separation authority be designated as MARCORPSEPMAN 6202, 2) that the separation code not be associated with Misconduct, 3) the narrative reason for separation be "miscellaneous," or other corresponding narrative[,] 4) a RE-1A reentry code, and 5) that the rank be reflected as SSgt [Staff Sergeant]. In addition, Petitioner requests all pay and allowances in excess of $28,000.00 that he would have rated based on the promotion to Staff Sergeant on 1 March 2008 but for the erroneous separation. These allowances include pay for

the remainder of his contracted enlistment totaling 19 months as a Staff Sergeant as well as 60 days of lost leave. Petitioner also requests retirement at the rank of Staff Sergeant given the intent of Petitioner to remain in the U.S. Marine Corps until reaching retirement eligibility.

In his application, Mr. Barna alleged the following errors and injustices by Marine Corps:

Sgt Barna was accused of an alleged DUI charge while in the Naval Reserve Officers Training Corps (ROTC) program. A performance review board (PRB) improperly considered evidence of prior incidents already considered prior to his acceptance into the Marine Enlistment Commissioning Education Program (MECEP) that provide placement into ROTC. After being assigned to a new command, charges were referred to a special court martial for the same alleged DUI after Sgt Barna was acquitted of the charge in civilian court. This was in direct violation of References (c) and (d) [Judge Advocate General Instruction (JAGINST) 5800.7D, article 0124 and MCO P5800.16A, para. 4001.3, respectively]. The charges resulted in an Article 15 NJP and a discharge from the U.S. Marine Corps, ending Sgt Barna's enlisted career after the PRB recommended that he stay in the U.S. Marine Corps.[4]

Offering his explanation for why the Marine Corps' actions had violated JAGINST 5800.7E, which he erroneously referred to as "JAGINSTR 5800.7D" throughout his application, and MCO P5800.16A, Mr. Barna stated, in relevant part:

JAGINSTR 5800.7D, para. 0124 ("JAGMAN") and MCO P5800.16A, para. 4001.3 ("LEGADMINMAN") both prohibit administrative and criminal proceedings against a Marine who has been adjudicated in civilian court. In this instance, the command had ample time to take action against Sgt Barna after being charged with DUI but did not. The charge was pending from 3 February 2010 until 23 September 2010, when Sgt Barna was notified that he in fact had been acquitted of the DUI charge. For over 7 months, the

---

[4] The court notes that there is no evidence in the record before the court that the Performance Review Board ever made such a recommendation, or any recommendation other than that Mr. Barna be disenrolled from the MECEP program. According to the report of proceedings for the April 16, 2010 Performance Review Board, the only statement made by the Board after announcing its disenrollment recommendation was that:

[T]he recommendation did not indicate that SSgt Barna was a bad Marine, it just meant he would not be an officer. He had been given an opportunity to earn a degree while in the program. If the recommendation for disenrollment were approved, the investment in SSgt Barna's education should not be considered a loss as much of what he learned would be beneficial to an enlisted Marine.

command did nothing to take any action against Sgt Barna, then after Sgt Barna was acquitted of the charge, subjected him to an NJP in violation of both the JAGMAN and LEGADMINMAN.

Mr. Barna also alleged that Col. Smith abused her discretion on several grounds, including that: "Col. Smith added an Article 86 charge to the NJP that was never acknowledged by Sgt Barna beforehand, nor does Sgt Barna even have any knowledge of the basis for such a charge."

On June 25, 2013, the Marine Corps' Judge Advocate Division (JAD) issued an advisory opinion for the BCNR regarding Mr. Barna's application for correction, which discussed the errors alleged in the application and recommended that Mr. Barna's request should be denied. In the "Background" section of the opinion, (emphasis in original), the JAD opinion noted the following relevant facts:

c. The Commanding Officer (CO), Headquarters and Support Battalion (H&S Bn) referred Applicant's case to court-martial on 10 August 2010.

d. As a result of his civilian conviction on 23 September 2010, Applicant's command restricted his promotion for 6 months, in accordance with paragraph 1204.4(r) of reference (c) [MCO P1400.32D].

* * *

f. On 15 October 2010, the CO, H&S Bn, notified Applicant of her intent to process him for administrative separation, on the basis of paragraph 6210.6 of reference (d), [MCO P1900.16F] misconduct (commission of a serious offense). Pursuant to the terms of the PTA, Applicant waived his right to an administrative separation board based on any act or omission reflected in the charges and specifications that were the subject of the agreement.

In discussing Mr. Barna's allegation that the Non-Judicial Punishment conducted on October 1, 2010 violated JAGINST 5800.7E and MCO P5800.16A, the JAD advisory opinion stated, in part:

The allegation of error is without merit. The Convening Authority (CA) and Accused may resolve a validly referred court-martial through NJP by mutual agreement, consistent with regulations.

(1) A convening authority need not obtain permission from court-martial proceedings if the civilian adjudication or diversion occurs "after the military charges have been referred," per reference (e) [JAGINST 5800.7E]. The Convening Authority (CA) and Accused may resolve a validly referred court-martial through NJP by mutual agreement, consistent with regulations. The CO, H&S Bn, referred Applicant's case to court-martial on 10 August 2010, over one month prior to Applicant's state trial. Therefore, the CO could have proceeded with the court-martial through findings and sentencing and action without violating reference (e).

(2) Reference (e) prohibits referral of charges or NJP after state trial as a matter of comity with state courts. Accordingly, if a state trial occurred prior to referral of charges or initiation of NJP proceedings, a CA would have to comply with the policy and procedures of 0124 of reference (e). However, if referral of a case to court-martial occurs *before* state trial, as here, the case may be resolved in any manner applicable to cases not subject to state trial. The alternative interpretation—that a contested trial or guilty plea at court-martial could proceed, but not NJP—is an absurdity. The result would be that every plea deal based on cases referred prior to state trial would have to result in an additional, federal conviction, rather than administrative proceedings. Such a result would subvert the very policy of comity underlying the regulation. The correct interpretation allows that a court-martial that may properly be conducted, may also be resolved in any of the normally authorized manners, including a NJP deal. Therefore, per applicable regulations, the commander could impose and Applicant could accept NJP pursuant to a PTA.

(3) Reference (f) [MCO P5800.16A] does not apply to NJP of enlisted Marines.

With regard to Mr. Barna's allegation that Col. Smith had abused her discretion, the JAD advisory opinion stated:

c. <u>Abuse of Discretion</u>. Applicant, through counsel, alleges that the CO, H&S Bn., mishandled Applicant's case. In addition to the improper NJP allegations discussed in paragraph 4a above [the alleged violations of JAGINST 5800.7E and MCO P5800.16A], Applicant alleges an additional error: the inclusion of an Article 86 specification at NJP. By including an additional specification of an offense, the CO actually minimized Applicant's exposure to punishment. Separate proceedings could have been pursued, which would have resulted in either more punishment, imposition of the suspended portion of the existing NJP, or court-martial. Instead, the CO included the specification with the original NJP and suspended most of the punishment. Further, Applicant reviewed the specifications with his attorney prior to accepting NJP. In no way can inclusion of the Art. 86 specification be construed as an error in need of correction.

(emphasis in original).

On August 1, 2013, Mr. Barna's attorney sent a rebuttal letter to the BCNR that reasserted the claims made in his application and "highlight[ed] some material errors in the advisory opinion." With regard to the JAD advisory opinion's discussion of JAGINST 5800.7E, the rebuttal letter stated:

**<u>The advisory opinion misinterprets the plain language of the instruction</u>**

The advisory opinion correctly states that JAGINST 5800.7E ("JAGMAN") "prohibits referral of charges or NJP after state trial as a matter of comity with state courts." In this case, an NJP was conducted pursuant to a pretrial agreement. The JAGMAN is clear and the advisory opinion correctly states that this was in violation of the JAGMAN. There is no caveat for "plea deals." Additionally, the commanding officer, a judge advocate herself, unjustly added an Article 86 charge outside of the agreement. This itself is both a material error and injustice. Colonel Smith's abuse of power is well documented in the original petition as well as in other cases currently pending.

The advisory opinion states that the argument that the NJP could not proceed is an "absurdity." The absurdity is in the fact that Sgt Barna was acquitted of the charge and the action was still pursued.

(emphasis in original).

On August 15, 2013, the BCNR sent a letter to Mr. Barna informing him that it had denied his application for correction on the same day. The letter began by stating that, in making its decision, the BCNR had considered Mr. Barna's application, the materials submitted with the application, Mr. Barna's service record, applicable statutes, regulations, and policies, the June 25, 2013 JAD advisory opinion, and Mr. Barna's attorney's August 1, 2013 rebuttal letter to the advisory opinion. The letter then explained why the BCNR had denied Mr. Barna's application, stating:

After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice. In this connection, the Board substantially concurred with the comments contained in the advisory opinion. Regarding your counsel's contention that you were not found guilty of driving under the influence of alcohol, the Board particularly noted that you pled guilty to "dry" reckless driving in civilian court, which is what you were found guilty of at nonjudicial punishment. In view of the above, your application has been denied. The names and votes of the members of the panel will be furnished upon request.

About a year and a half later, Mr. Barna filed a complaint in this court on February 2, 2015, and an amended complaint on November 12, 2015. In his amended complaint, Mr. Barna alleges four causes of action, that: (1) the BCNR's decision was arbitrary, capricious, unsupported by evidence and contrary to law; (2) Mr. Barna, wrongly, has been denied $286,533.79 for basic monthly pay, basic allowance for subsistence, and basic allowance for housing at the rank of Staff Sergeant, which he is entitled to under 37 U.S.C. §§ 204, 402 and 403 (2012); (3) Mr. Barna, wrongly, has been denied $6,102.00 for sixty days of unused leave which he is entitled to under 37 U.S.C. § 501 (2012); and (4) as an alternative to the second cause of action, Mr. Barna is entitled to $17,939.88 in separation pay under 10 U.S.C. § 1174 (2012). With regard to the first cause of action, Mr. Barna challenges two elements of the BCNR's decision: (1) the BCNR's findings that

the prosecution and administrative action against Mr. Barna that resulted in his discharge from the Marine Corps did not violate applicable rules, policies and regulations (Mr. Barna's "discharge claim"); and (2) the BCNR's denial of his request for a promotion to Staff Sergeant (Mr. Barna's "promotion claim"). As relief, the amended complaint asks this court to set aside the BCNR's decision and remand to the BCNR to facilitate the following actions: amend Mr. Barna's Official Military Personnel File to show that he was promoted to Staff Sergeant on March 1, 2008; amend Mr. Barna's Department of Defense Form 214 to reflect the rank of Staff Sergeant, the phrase "released from active duty" as the type of separation, Marine Corps Separation Manual (MARCORSEPMAN) § 1005 as the separation authority, and a separation code that is associated with the expiration of term of service; award Mr. Barna $6,102.00 for unused accrued leave; award Mr. Barna pay and allowances in the amount of $98,289.06[5] or separation pay in the amount of $17,939.88; and award Mr. Barna attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 (2012). In the alternative, Mr. Barna requests that the court remand to the BCNR any issues it believes require further review or clarification.

In 2016, defendant filed a motion to dismiss Mr. Barna's amended complaint pursuant to Rule 12(b)(6) (2015) of the Rules of the United States Court of Federal Claims (RCFC), or in the alternative, for judgment on the administrative record in favor of the defendant, pursuant to RCFC 52.1(c) (2015). In response, Mr. Barna filed an opposition to defendant's motion and a cross-motion for judgment on the administrative record, and both parties filed replied.

## DISCUSSION

Initially, plaintiff moves to supplement the record with five documents: (1) a charge sheet preferring UCMJ Article 107 and 111 charges against Mr. Barna and referring those charges to a special court-martial; (2) a February 8, 2016 affidavit signed by Mr. Barna in which he alleges that he did not consult with his attorney prior to receiving Non-Judicial Punishment on October 1, 2011 or prior to signing his Notification of Administrative Separation on October 15, 2011, that he signed his Pre-Trial Agreement because he "did not feel comfortable" with Col. Smith, and that he was not allowed to sell his leave upon leaving the Marine Corps; (3) an Order, dated September 20, 2010, from Col. Smith ordering an investigation into the facts and circumstances surrounding a November 2008 injury suffered by plaintiff; (4) a letter, dated April 2011, from the Office of the Inspector General of the Marine Corps to Mr. Barna stating that it had conducted an inquiry into the unspecified allegations in a November 3, 2010 complaint made by Mr. Barna and found them to be not substantiated; and (5) a Discharge Order, dated October 21, 2010, discharging Mr. Barna from the Marine Corps.

The United States Court of Appeals for the Federal Circuit has emphasized that, on a motion for judgment on the Administrative Record, "'the focal point for judicial review

---

[5] Mr. Barna does not clarify, either in his amended complaint or in his other filings to this court, how he derived this $98,289.06 figure or why it differs from the $286,533.79 figure he alleges he is owed under his second cause of action in his complaint.

should be the administrative record already in existence, not some new record made initially in the reviewing court.'" Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1379–80 (Fed. Cir. 2009) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)). The Federal Circuit explained that supplementation of the record is not completely ruled out, however, that "the parties' ability to supplement the administrative record is limited." Id. at 1379. The record only should be supplemented to include documents that were not before the agency at the time the decision was made in "cases in which 'the omission of extra-record evidence precludes effective judicial review.'" Id. at 1380 (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (2000)).

The first and fifth exhibits offered by plaintiff, the charge sheet and Mr. Barna's Discharge Order are part of Mr. Barna's official personnel record as a Marine, even if they were not included by the government in the administrative record filed with this court. Further, both documents provide relevant information to the court regarding important issues in this case that is not available elsewhere in the administrative record provided to the court previously. The charge sheet provides the exact date that charges were preferred against Mr. Barna, as well as the exact language of the charges that were preferred and referred to the special court-martial. This information is relevant to Mr. Barna's allegation, discussed below, that the defendant violated his right to a speedy trial under RCM 707(a) by failing to refer the charge of violating UCMJ Article 111 against him to a court-martial within 120 days after the charge was preferred. With regard to the Discharge Order, plaintiff alleges he is owed compensation for his unused leave under 37 U.S.C. § 501. To determine the amount of compensation plaintiff is owed for his accrued leave, it is necessary to know the number of leave days he had accrued at the time of his discharge. See 37 U.S.C. § 501(b)(1). This number is not provided anywhere in the administrative record previously provided to the court, but is listed in plaintiff's Discharge Order. Plaintiff's motion to supplement the administrative record is, therefore, granted with respect to the charge sheet and Discharge Order, which are both necessary for this court's effective judicial review.

The second exhibit offered by plaintiff, his February 8, 2016 affidavit, was not a part of his official record as a Marine. In his affidavit, Mr. Barna makes statements concerning three topics. First, Mr. Barna states that he did not consult with his attorney prior to signing the form accepting Non-Judicial Punishment on October 1, 2010 and prior to signing the Notification of Administrative Separation on October 15, 2010 because he believed that both the Non-Judicial Punishment and the Administrative Discharge were being imposed pursuant to a valid Pre-Trial Agreement. Mr. Barna argues that these statements will help the court resolve disputed facts because they represent "his response to Defendant's argument that Mr. Barna had the opportunity to consult with counsel prior to accepting NJP and upon notification of administrative separation." In fact, nothing in Mr. Barna's affidavit indicates how Mr. Barna was denied an opportunity to consult with counsel prior to accepting Non-Judicial Punishment and signing the Notification of Administrative Separation, or, in fact, that he was denied such an opportunity. Instead, Mr. Barna's statements indicate that he chose not to speak with his attorney prior to signing the two documents because he believed his Pre-Trial Agreement was valid, which, as discussed below, was true. Second, Mr. Barna's states in his affidavit that he entered into the Pre-Trial Agreement because he "did not feel comfortable with

Colonel Smith as the convening authority." Regardless of Mr. Barna's feelings towards Colonel Smith, the Pre-Trial Agreement into which Mr. Barna entered is valid and has legal effect. Finally, Mr. Barna states in his affidavit that he was not allowed to "sell back" his accumulated leave to the government after leaving the Marine Corps. Because, as discussed below, there is no dispute that Mr. Barna is entitled to receive compensation for his accumulated leave and, since filing the complaint, he appears to have begun the process of doing so, his statement about his past inability to do so is not presently relevant. Plaintiff's motion to supplement the administrative record is, therefore, denied with respect to plaintiff's affidavit.

The third and fourth documents offered by plaintiff, Col. Smith's September 20, 2010 Order and the April 2011 letter from the Office of the Inspector General, are not relevant to any of the legal issues in this case. Col. Smith's September 20, 2010 Order concerns an event in Mr. Barna's Marine career, a "November 2008 broken arm incident," for which there are no further details in the letter or elsewhere in the record, and which was not mentioned during the Performance Review Board, Non-Judicial Punishment or Administrative Separation proceedings that Mr. Barna underwent prior to his discharge. The April 2011 Office of the Inspector General letter lacks any substantive description of the matter that was referred to the Inspector General by Mr. Barna and, thus, cannot add to judicial review of the matters at issue. Plaintiff's motion to supplement the administrative record, therefore, is denied with respect to the Col. Smith's September 20, 2010 Order, and the April 2011 letter from Office of the Inspector General.

Defendant moves to dismiss plaintiff's claims for failure to state a claim under RCFC 12(b)(6) or, in the alternative, for judgment in its favor pursuant RCFC 52.1(c). Plaintiff seeks judgment in his favor on all his claims pursuant to RCFC 52.1(c). A motion to dismiss under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted "'is appropriate when the facts asserted by the claimant do not under the law entitle him [or her] to a remedy.'" Murdock v. United States, 103 Fed. Cl. 389, 394 (2012) (alterations in original) (quoting Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998)). In examining what must be pled in order to state a claim, under both RCFC 8(a)(2) and Rule (8)(a)(2) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2015); Fed. R. Civ. P. 8(a)(2) (2016); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); TrinCo Inv. Co. v. United States, 722 F.3d 1375, 1380 (Fed. Cir. 2013) ("To avoid dismissal under RFCF [RCFC] 12(b)(6), a party need only plead 'facts to state a claim to relief that is plausible on its face,' with facts sufficient to nudge 'claims across the line from conceivable to plausible.'") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555)). The United States Supreme Court in Twombly stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss [for failure to state a claim] does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment]" to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must

be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56, 570 (footnote and other citations omitted; brackets and omissions in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354-55 (Fed. Cir.), cert. denied, 562 U.S. 830 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)); Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570)), reh'g denied (Fed. Cir.), cert. denied, 557 U.S. 937 (2009); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 726-27 (2010), appeal dismissed, 454 F. App'x 900 (2011); Legal Aid Soc'y of New York v. United States, 92 Fed. Cl. 285, 292, 298, 298 n.14 (2010); Hall v. Bed Bath & Beyond, Inc., 705 F.3d 1357, 1362 (Fed. Cir. 2013) ("the factual allegations must 'raise a right to relief above the speculative level' and must cross 'the line from conceivable to plausible.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555)).

When deciding whether a plaintiff has failed to state a claim upon which relief can be granted, the court assumes that the undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Cambridge v. United States, 558 F.3d at 1335 (citing Papasan v. Allain, 478 U.S. 265, 283 (1986)); Cary v. United States, 552 F.3d at 1376 (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); Anaheim Gardens v. United States, 444 F.3d 1309, 1315 (Fed. Cir.), reh'g denied (Fed. Cir. 2006); Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000); Perez v. United States, 156 F.3d at 1370; Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). If a defendant or the court challenges jurisdiction or a plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the

complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); see also Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988). Therefore, although the court must assume that the undisputed facts alleged in the complaint are true for the purposes of the motion to dismiss and draws all reasonable inferences in the plaintiffs' favor, the facts alleged in the complaint must be plausible and not merely naked assertions devoid of a factual basis. See Ashcroft v. Iqbal, 556 U.S. at 678; see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)) (mere allegations of law and conclusions of fact are insufficient to support a claim).

Pursuant to RCFC 52.1(c), which governs motions for judgment on the administrative record, the court's inquiry is directed to "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." Mgmt. and Training Corp. v. United States, 115 Fed. Cl. 26, 40 (2014) (quoting A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356–57 (Fed. Cir. 2005)); see also Vellanti v. United States, 119 Fed. Cl. 570, 578 (2015) (quoting Sierra Nevada Corp. v. United States, 107 Fed. Cl. 735, 751 (2012)) ("RCFC 52.1 governs motions for judgment on the administrative record. . . . Unlike summary judgment, for instance, 'a genuine dispute of material fact does not preclude a judgment on the administrative record.'").

Mr. Barna's complaint centers around allegations that the BCNR's findings regarding his discharge and promotion claims were arbitrary, capricious, unsupported by evidence and contrary to law. The court reviews the BCNR's decision "to determine whether it is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." Lewis v. United States, 458 F.3d 1372, 1376 (Fed. Cir.) (citing Martinez v. United States, 333 F.3d 1295, 1305, 1314 (Fed. Cir. 2003), cert. denied, 540 U.S. 1177 (2004)), reh'g en banc denied (Fed. Cir. 2006), cert. denied, 552 U.S. 810 (2007); see also Chappell v. Wallace, 462 U.S. 296, 303 (1983) ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence."); Burnick v. United States, 541 F.3d 1372, 1377 (Fed. Cir. 2010); Barnes v. United States, 473 F.3d 1356, 1361 (Fed. Cir.) ("We apply the same standard of review as the United States Court of Federal Claims, which means 'we will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence.'" (quoting Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005)), cert. denied, 552 U.S. 813 (2007); Metz v. United States, 466 F.3d 991, 998 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006); Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 528 U.S. 809 (1999); Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983); Skinner v. United States, 219 Ct. Cl. 322, 331, 594 F.2d 824, 830 (1979); Spellissy v. United States, 103 Fed. Cl. 274, 283 (2012) ("[W]hen a service member chooses to seek relief from a military corrections board, the court 'will not disturb the decision of [a] corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence.'" (quoting Chambers v. United States, 417 F.3d at 1227) (second modification in original)). In Riser v. United States, the United States Court

of Federal Claims noted that plaintiff must show that the decision by the ABCMR was arbitrary and capricious, contrary to law, or unsupported by substantial evidence, and that, in accordance with this deferential standard of review, the court does not reweigh the evidence, "but rather considers whether *the conclusion being reviewed* is supported by substantial evidence. So long as the Board considered the relevant evidence and came to a reasonable conclusion, this court will not disturb the Board's decision." Riser v. United States, 97 Fed. Cl. 679, 683–84 (2011) (quoting Heisig v. United States, 719 F.2d at 1157) (emphasis in original; other citations omitted); see also Holmes v. United States, 98 Fed. Cl. 767, 780–81 (2011) ("'The Board's decision will comply with the substantial evidence standard so long as a 'reasonable mind might accept" [the] particular evidentiary record as "adequate to support [the contested] conclusion."'" (quoting Dickinson v. Zurko, 527 U.S. 150, 162 (1999) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938))) (modifications in original)).

This standard of review is narrow. The court does not sit as "a super correction board." Skinner v. United States, 219 Ct. Cl. at 331, 594 F.2d at 830; see also Voge v. United States, 844 F.2d 776, 782 (Fed. Cir.) (The "court does not function as 'a sort of super Correction Board.'" (quoting Reale v. United States, 208 Ct. Cl. 1010, 1013, 529 F.2d 533, cert. denied, 429 U.S. 854 (1976))), cert. denied, 488 U.S. 941 (1988). Moreover, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." Dodson v. United States, 988 F.2d 1199, 1204 (Fed. Cir.), reh'g denied (Fed. Cir. 1993). "'[J]udges are not given the task of running the Army.'" Antonellis v. United States, 723 F.3d 1328, 1332 (Fed. Cir. 2013) (quoting Orloff v. Willoughby, 345 U.S. 83, 93 (1953)). The United States Supreme Court, however, has also stated:

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given. SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) [reh'g denied and reh'g denied sub nom. SEC v. Fed. Water & Gas Corp. (1947)]. We will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc., 419 U.S. [281,] 286, 95 S. Ct. 438, 42 L. Ed. 2d 447 [(1974)]. See also Camp v. Pitts, 411 U.S. 138, 142–143, 93 S. Ct. 1241, 36 L. Ed. 2d 106 (1973) (per curiam).

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43–44 (1983) (other citations omitted); see also SKF USA Inc. v. United States, 630 F.3d 1365, 1373 n.3 (Fed. Cir. 2011)). In sum, as a Judge of the United States Court of Federal Claims explained in Verbeck v. United States:

18

The court's review in these matters is thus limited in scope and deferential in nature. Ms. Verbeck must show that the Board's decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence. See Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005) [cert. denied, 546 U.S. 1066 (2005)]; Godwin v. United States, 338 F.3d 1374, 1378 (Fed. Cir. 2003); Heisig [v. United States], 719 F.2d [1153, 1156 (Fed. Cir. 1983)]. . . . The Board's decision will comply with the substantial evidence standard so long as a "'reasonable mind might accept' [the] particular evidentiary record as 'adequate to support [the contested] conclusion.'" Dickinson v. Zurko, 527 U.S. 150, 162, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (quoting Consolidated Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Similarly, the arbitrary and capricious standard "requires a reviewing court to sustain an action evincing rational reasoning and consideration of relevant factors." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir.[), reh'g denied (Fed. Cir. 2000)].

In sum, the court must satisfy itself that the Board considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it. See Heisig, 719 F.2d at 1157 ("Under the substantial evidence rule, all of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion."); Van Cleave v. United States, 70 Fed. Cl. 674, 678–79 (2006) (While the court does not "serve as a 'super correction board[,]' Skinner v. United States, [219 Ct. Cl. at 331] . . . correction boards must examine relevant data and articulate satisfactory explanations for their decisions.") (citations omitted). If the Board "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [Board], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise[,]" its decision runs afoul of even this lenient standard of review. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983).

Verbeck v. United States, 97 Fed. Cl. 443, 451 (2011) (second omission in original); see also PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010) (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058).

As noted above, Mr. Barna's amended complaint alleges four causes of action. The first cause of action, that the BCNR's decision was arbitrary, capricious, unsupported by evidence, and contrary to law, alleges that the BCNR's decision erred on two separate grounds, which will be referred to as Mr. Barna's discharge claim and his promotion claim. Because Mr. Barna's discharge and promotion claims involve largely independent issues of law and fact, the two claims are examined separately. Plaintiff's second and fourth causes of action, alleging that he has been wrongfully denied Staff Sergeant pay and separation pay, respectively, are plead in the alterative. Because they are pled in the

alternative and are both contingent on the court finding the BCNR's decision to be in error, the court will examine these two causes of action together. Plaintiff's third and final cause of action is for compensation for sixty days of unused accrued leave as a Staff Sergeant.

## The BCNR's Findings Regarding Mr. Barna's Discharge Claim

Plaintiff alleges that the BCNR's decision related to his discharge claim was arbitrary and capricious because the BCNR failed to recognize that Mr. Barna was unlawfully discharged pursuant to an invalid Pre-Trial Agreement. Plaintiff argues that the Pre-Trial Agreement was invalid on two independent grounds: (1) the Pre-Trial Agreement "stemmed" from a charge of violating UCMJ Article 111 that had been improperly referred to a court-martial in violation of Mr. Barna's right to a speedy trial under RCM 707(a); and (2) the inclusion of charges of violations of UCMJ Articles 86 and 92 in the October 1, 2010 Non-Judicial Punishment breached a material term of the Pre-Trial Agreement, which Mr. Barna alleges limited his exposure to Non-Judicial Punishment to the charge of violation of Article 111, UCMJ. Plaintiff argues that, because the Pre-Trial Agreement was invalid, his right to an administrative discharge board, which he had waived under paragraph 10 of the Pre-Trial Agreement, was re-instated and his discharge without such a board was unlawful. Plaintiff also argues that, because the Pre-Trial Agreement was invalid, the charges included in the October 1, 2010 Non-Judicial Punishment were "essentially charges brought anew" and, therefore, were in violation of JAGINST 5800.7E, ¶ 0124.a. The version of JAGINST 5800.7E, ¶ 0124.a in place at the time of the October 1, 2010 Non-Judicial Punishment, stated, in relevant part:

> a. Policy. When a person in the Naval service has been tried in a state or foreign court, whether convicted or acquitted, . . . military charges shall not be referred to a court-martial or be the subject of nonjudicial punishment proceedings for the same act or acts, except in those unusual cases where trial by court-martial or the imposition of nonjudicial punishment is considered essential in the interests of justice, discipline, and proper administration within the Naval service.

JAGINST 5800.7E, ¶ 0124.a (June 20, 2007).

Defendant argues that all of plaintiff's arguments as to the invalidity of the Pre-Trial Agreement and his right to an administrative discharge board have been waived by plaintiff due to his failure to raise them before the BCNR. Defendant further argues that, in the even the court determines plaintiff has waived these arguments, remand to the BCNR is inappropriate under the circumstances of the present case. In the alternative, defendant argues that each of plaintiff's arguments fails on the merits and that defendant should be granted judgment on the administrative record.

*Defendant's Alleged Violation of the Rules of Courts-Martial Rule 707(a)*

The first reason plaintiff alleges his Pre-Trial Agreement was invalid is that the Pre-Trial Agreement allegedly "was pursuant to an invalidly referred charge of violation of Article 111, UCMJ, to a Special Court-Martial which was in violation of the Rules of

Courts-Martial (R.C.M.)." In particular, plaintiff alleges that the referral of the UCMJ Article 111 charge for a DUI to a special court-martial on August 10, 2010 violated his right to a speedy trial under RCM 707(a). The version of RCM 707(a) that was in effect during the period at issue stated, in relevant part: "The accused shall be brought to trial within 120 days after . . . Preferral of charges." RCM 707(a) (2008). In support of this allegation, plaintiff asserts that, when, as in the present case, the command chooses to pursue Non-Judicial Punishment, rather than a court-martial against an accused, the answer to the question of when the preferral of charges takes place "is not as clear" as it is in the case of a court-martial. According to plaintiff, because "[t]he right to counsel and the right to a speedy trial closely align," the court should look to cases involving the right to counsel to determine when preferral takes place. Citing a United States Court of Appeals for the Armed Forces right to counsel case, United States v. Marshall, 45 M.J. 268, 271 (C.A.A.F. 1996), plaintiff argues that "the adversary requirement, for purposes of determining preferral, begins at the moment the service member demands trial by Court-Martial on the charges he or she is currently facing at NJP." According to plaintiff, it then follows that the 120 day requirement under RCM 707(a) began, either when the Article 111 charge was first brought against him in Non-Judicial Punishment, on February 23, 2010, or when he refused Non-Judicial Punishment for that charge and demanded a court-martial, on March 19, 2010. Plaintiff argues that because the Article 111 charge against him was not referred to a court-martial until August 10, 2010, over 120 days after March 19, 2010, RCM 707(a) was violated, and the Article 111 charge should have been dismissed pursuant RCM 707(d). According to plaintiff, the result was that the Pre-Trial Agreement which stemmed from the Article 111 charge also was improper. Plaintiff does not argue that he made this complex argument explicitly before the BCNR. Instead, he argues that he raised the issue with "sufficient specificity to allow the Board to rule" when, in his application, he stated that "the command had ample time to take action against him, but never did."

Defendant initially argues that plaintiff is precluded from making his speedy trial argument before this court because he failed to present it before the BCNR. Moving to the merits of plaintiff's allegation, defendant argues that plaintiff is attempting to "shoehorn the speedy trial provisions of RCM 707 into his amended complaint by incorrectly defining 'preferral of charges' to suit his purposes." Contrary to plaintiff's argument that the issue of when charges against Mr. Barna were preferred were unclear, defendant argues "the record evidence is abundantly clear: charges were preferred against Mr. Barna on July 15, 2010." That was the date when the charge sheet alleging violations of UCMJ Articles 107 and 111 by Mr. Barna was reduced to writing and sworn to. Defendant next argues that "[t]he applicable regulations and case law make it clear that the preferral of charges and NJP are distinct processes and that NJP does not involve preferral." Defendant notes that, under the applicable regulations, RCM 307(a)-(c), preferral of charges is a defined act with detailed procedures and formalities that, it is undisputed, were not accomplished by the February 23, 2010 Non-Judicial Punishment offer cited by plaintiff or when plaintiff rejected that offer and demanded a court-martial on March 19, 2010. Defendant rejects plaintiff's argument that preferral takes place when an accused requests a court-martial, as plaintiff did on March 19, 2010, noting that plaintiff cites no legal authority for this position. Defendant also notes that the section of the Manual for Courts-Martial governing Non-Judicial Punishment instructs commanders to consult the procedural rules governing

the preferral of charges in the event an accused refuses Non-Judicial Punishment. See Manual for Courts-Martial, Part V, ¶ 4.b.1 (2012). According to defendant, this instruction would be unnecessary should such a denial constitute de facto preferral. Defendant further argues that defendant's proposal would "strip commanders" of the discretion afforded by the military justice process to drop charges against an accused when leniency is warranted by "send[ing] every NJP refusal on the path to a court-martial." According to defendant, "[b]ecause NJP does not constitute preferral as a matter of law, the speedy trial period contemplated by RCM 707(a) began on July 15, 2010 – the undisputed date when charges were preferred against Mr. Barna." Defendant notes that the Pre-Trial Agreement was fully executed in September 2010, Mr. Barna accepted Non-Judicial Punishment on October 1, 2010, and the pending court-martial against Mr. Barna was withdrawn on October 1, 2010, all well before 120 days after the July 15, 2010 date charges were preferred against Mr. Barna.

The court first examines defendant's argument that plaintiff failed to make his speedy trial argument before the BCNR as it impacts this court's jurisdiction to hear the argument. When a plaintiff fails to raise arguments before a military correction board such as the BCNR, he or she is precluded from raising those arguments for the first time before this court. See Walls v. United States, 582 F.3d 1358, 1367 (Fed. Cir. 2009) (holding that judicial review of decisions of military correction boards is review of the Administrative Record conducted under the Administrative Procedure Act); Metz v. United States, 466 F.3d 991, 999 (Fed. Cir. 2006) (holding that plaintiff waived his argument of ineffective counsel in front of the United States Court of Federal Claims because he failed to raise the issue in the first instance with the Air Force Board for the Correction of Military Records); Murakami v. United States, 398 F.3d 1342, 1354 (Fed. Cir. 2005) (holding that the Court of Federal Claims correctly concluded that plaintiff waived his argument concerning his father's constructive travel restriction by not first raising the argument with the administrative agency); Spellissy v. United States, 103 Fed. Cl. 274, 283 (2012) ("When a service member chooses first to petition a military correction board, the Court of Federal Claims' review is limited to the administrative record.") (citations omitted); Prochazka v. United States, 90 Fed. Cl. 481, 497 (2009) ("As a general rule, failure to present an issue before a correction board waives a later raised claim." (citing Doyle v. United States, 220 Ct. Cl. 285 (1979))); Neutze v. United States, 88 Fed. Cl. 763, 774–75 (2009) (citing Sanders v. United States, 219 Ct. Cl. 285, 594 F.2d 804, 811 (1979)) ("In evaluating a Board decision, the court may not consider new arguments not raised before the Board."); see also Barnick v. United States, 80 Fed. Cl. 545, 560 (2008) ("[t]he court will not consider materials that were not presented to a review board"), aff'd, 591 F.3d 1372, 1374 (Fed. Cir. 2010) (internal citations omitted). "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." Metz v. United States, 466 F.3d at 999 (quoting United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952)). This rule "ensures that agencies will have the opportunity to develop their positions and correct their errors before an appeal." Village of Barrington, III, v. Surface Transp. Bd., 636 F.3d 650, 655 (Fed. Cir. 2011) (citing United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. at 37).

Plaintiff argues that he raised the issue of his right to a speedy trial under RCM 707(c) before the BCNR, when, in his application to the BCNR, he argued "that the command had ample time to take action against him, but never did." Plaintiff does not provide a precise citation to the administrative record to support this allegation, but the portion of his application that he appears to be referring to states:

> JAGINSTR 5800.7D, para. 0124 ("JAGMAN") and MCO P5800.16A, para. 4001.3 ("LEGADMINMAN") both prohibit administrative and criminal proceedings against a Marine who has been adjudicated in civilian court. In this instance, <u>the command had ample time to take action against Sgt. Barna after being charged with DUI but did not</u>. The charge was pending [in civilian court] from 3 February 2010 until 23 September 2010, when Sgt Barna was notified that he in fact had been acquitted of the DUI charge. For over 7 months, the command did nothing to take any action against Sgt Barna, then after Sgt Barna was acquitted of the charge [in civilian court], subjected him to an NJP in violation of both the JAGMAN and LEGADMINMAN.

(emphasis added).

It appears that plaintiff's "ample time" statement was made before the BCNR in order to support Mr. Barna's argument that the Marine Corps had violated JAGINSTR 5800.7E, para. 0124 and MCO P5800.16A, para. 4001.3, by bringing Non-Judicial Punishment against him based on his February 3, 2010 DUI arrest after the charges had been dropped in civilian court, not to argue that Mr. Barna's right to a speedy trial under RCM 707(a) had been violated. There is no mention, either in this portion of his argument to the BCNR or anywhere else in Mr. Barna's application, of RCM 707(a), regarding its 120 day requirement or the alleged denial of Mr. Barna's right to a speedy trial. Further, there is no mention in Mr. Barna's application to the BCNR, the 15 enclosures to that application, which together comprise 62 pages, or Mr. Barna's attorney's rebuttal to the JAD advisory opinion to either of the two events, the initiation of the first Non-Judicial Punishment proceeding against Mr. Barna, on February 23, 2010, or of his refusal to accept that Non-Judicial Punishment, on March 19, 2010, which plaintiff now alleges started the running of the RCM 707(a) 120 day requirement. Mr. Barna, thus, failed to present his RCM 707(a) speedy trial argument before the BCNR. He is, therefore, precluded from arguing that he was denied a right to a speedy trial in the present litigation.

Plaintiff alternatively argues that, should the court find that any of his arguments, including his RCM 707(a) argument, were not sufficiently raised before the BCNR, that the court should remand his case to the BCNR in accordance with <u>Prochazka v. United States</u>, 90 Fed. Cl. 481. In support of his argument, plaintiff quotes the following portion of <u>Prochazka v. United States</u>:

> As [a] general rule, failure to present an issue before a correction board waives a later raised claim. *Doyle v. United States,* 220 Ct. Cl. 285, 599 F.2d 984, 1000–01 (1979), *cert. denied,* 446 U.S. 982, 100 S. Ct. 2961, 64 L. Ed. 2d 837 (1980) (applying the exhaustion rule to a plaintiff who failed

to raise an issue before a Board for Correction of Military Records). Congress, however, has authorized the court "to remand appropriate matters to an administrative or executive body or official with such direction as it *may deem proper or just.*" 28 U.S.C. § 1491(a)(2) (2006) (emphasis added); *see also Harris* [*v. United States*]*,* 14 Cl. Ct. [84] at 89 [(1987)] (remanding to a military record correction board when Plaintiff had not previously raised the issue); *Fucik v. United States,* 228 Ct. Cl. 379, 655 F.2d 1089, 1095 (Cl. Ct. 1981) (remanding to administrative board an issue that plaintiff had failed to submit to the board).

Prochazka v. United States, 90 Fed. Cl. at 497 (emphasis in original).

Plaintiff also refers to two of the cases cited in this portion of Prochazka, Harris v. United States*,* 14 Cl. Ct. 84 (1987) and Fucik v. United States*,* 228 Ct. Cl. 379 (1981), to further support his argument. Each case is distinguishable from the present one. In Prochazka, the court based its decision to remand the newly raised issue to the BCNR on the facts that "Plaintiff did not have the benefit of counsel before the BCNR" and that "th[e] significant issue was not identified until counsel was secured" in the case before the United States Court of Federal Claims. Prochazka v. United States, 90 Fed. Cl. at 497. By contrast, in the present case, plaintiff was represented before the BCNR by the same law firm which represents him in the case currently before this court. In the second opinion cited by plaintiff, Harris v. United States, the United States Claims Court did not order a remand, but mentioned that an earlier opinion in the case had remanded the case to Air Force Board for Correction of Military Records (AFBCMR). See Harris v. United States, 14 Cl. Ct. at 89. The earlier opinion, Harris v. United States, 8 Cl. Ct. 299 (1985), held that remand to the AFBCMR was necessary "[t]o give the plaintiff a full and fair opportunity to litigate his claim" because the plaintiff allegedly had discovered "new evidence during the Board proceedings," but "'AFBCMR staff discouraged [his] reapplying for relief because it would take a year or more to consider.'" Id. at 303 (brackets in original). In the present case, Mr. Barna does not allege that he discovered any new evidence related to his RCM 707(a) allegations either during or after the BCNR proceedings. Finally, in Fucik, the court ordered a remand to the Merit Systems Protection Board (MSPB) on an issue that "was not clearly raised" before the MSPB, because, with the benefit of the briefing before it, the court was "able to reread plaintiff's brief and appendices before the board and find the allegations and evidence that point towards this issue." Fucik v. United States, 228 Ct. Cl. at 385-86. In the present case, as discussed above, not only was there no mention of plaintiff's RCM 707(a) argument in plaintiff's application to the BCNR and his subsequent rebuttal to the JAD's advisory opinion, but the central evidence on which plaintiff bases this argument, the dates of the initiation of the first Non-Judicial Punishment against Mr. Barna of his subsequent refusal of Non-Judicial Punishment for that charge, are totally absent from the documents Mr. Barna provided the BCNR. Moreover, given that the date on which charges were preferred against Mr. Barna was July 15, 2010, a remand to the BCNR on this issue would prove fruitless. This court, therefore, declines to exercise its authority to remand Mr. Barna's RCM 707(a) argument to the BCNR.

*Defendant's Alleged Violation of a Material Term of the Pre-Trial Agreement*

The second reason plaintiff claims his Pre-Trial Agreement was invalid is that the inclusion in the Non-Judicial Punishment proceedings of the charges of violations of UCMJ Articles 86, for absence without leave, and 92, for failure to obey a lawful order, allegedly violated a material term of the Pre-Trial Agreement, rendering it void. In particular, plaintiff alleges that the inclusion of these charges in the Non-Judicial Punishment violated the following portion of paragraph 9 of the Pre-Trial Agreement: "I understand that in return for my plea of guilty, the convening authority agrees to refer the charges and specifications to which I will plead guilty to nonjudicial punishment." Plaintiff argues that this language "unambiguously contemplate[d] that only the charge of violation of Article 111, UCMJ, [for a DUI,] as set forth on the charge sheet that was referred to a Special Court-Martial on August 10, 2010 was subject to the NJP." Mr. Barna argues that this limitation was material because it was the "crux of the PTA," under which, plaintiff argues, he was to accept Non-Judicial Punishment for the violation of UCMJ Article 111 in exchange for the government's agreement to drop the same UCMJ Article 111 charge in the special court-martial. According to plaintiff, because the term was material, the government's alleged violation of it invalidated the Pre-Trial Agreement, including plaintiff's waiver of an administrative separation board.

The only statement made by Mr. Barna before the BCNR  that references both the inclusion of the Article 86 charge for absence without leave in his Non-Judicial Punishment and his Pre-Trial Agreement is the following portion of his attorney's rebuttal letter to the JAD's advisory opinion: "Additionally, the commanding officer, a judge advocate herself, unjustly added an Article 86 charge outside of the agreement. This itself is both a material error and injustice." There is no mention in either Mr. Barna's application to the BCNR or his rebuttal letter to the inclusion of the UCMJ Article 92 charge that also was included in the Non-Judicial Punishment, but not listed in the Pre-Trial Agreement. Defendant argues, quoting Wollman v. United States, 108 Fed. Cl. 656, 674 (2013), that "this 'vague reference' is insufficient to put the board on notice of an issue." Defendant also argues that context reveals that the quoted statement is actually a challenge to the punishment imposed at Non-Judicial Punishment, which plaintiff does not contest before this court. Further, defendant argues that this is the only time Mr. Barna mentioned the Pre-Trial Agreement before the BCNR, and that he never mentioned any issues regarding the administrative separation board.

Mr. Barna's rebuttal letter to the JAD advisory opinion, which was prepared by an attorney at the same law firm which represents Mr. Barna in the present litigation, begins by stating that its purpose is to "highlight some material errors in the advisory opinion." The letter then includes two substantive sections discussing alleged errors in the JAD advisory opinion. The section in which the statement referring to the Article 86 charge is titled: "**The advisory opinion misinterprets the plain language of the instruction** [JAGINST 5800.7E]." (emphasis in original). The section begins by saying that the advisory opinion "correctly states" that the Non-Judicial Punishment had violated JAGINST 5800.7E's alleged prohibition against instituting Non-Judicial Punishment after the conclusion of a state trial because, in JAGINST 5800.7E, "[t]here is no caveat for 'plea deals.'" The letter then makes the following assertion: "Additionally, the commanding

officer, a judge advocate herself, unjustly added an Article 86 charge outside of the agreement." The next paragraph after this statement states: "The advisory opinion states that the argument that the NJP could not proceed is an 'absurdity.' The absurdity is in the fact that Sgt Barna was acquitted of the charge and the action was still pursued."

Defendant is correct that the statement cited by plaintiff was made in the context of plaintiff's argument that the Non-Judicial Punishment was improper because it violated JAGINST 5800.7E. The statement, however, does appear to allege that the terms of the Pre-Trial Agreement itself had been violated. While the rebuttal letter does not use precise language, a reasonable interpretation of the allegation that the UCMJ Article 86 charge had been added "outside of the agreement" is that this action had breached the terms of the Pre-Trial Agreement. Further, the statement in the next sentence that "[t]his _itself_" was a "material error and injustice," suggests that Mr. Barna was alleging that the inclusion of a charge outside the Pre-Trial Agreement was in error independent of the regulatory violation discussed in the rest of the paragraph. (emphasis added). Thus, it appears that plaintiff was arguing before the BCNR that the government breached the terms of Pre-Trial Agreement by including the UCMJ Article 86 charge not listed in the Pre-Trial Agreement, albeit without the additional allegation relating to the inclusion of the UCMJ Article 92 charge that he now also makes before this court. The present case, therefore, is distinguishable from the case cited by defendant, Wollman v. United States, in which that plaintiff failed to actually argue before the United States Army Physical Disability Agency (APDRB) that he was entitled to receive disability benefits based on a wrist fracture and plantar fasciitis, but instead "mere[ly] reference[d]" certain symptoms of the wrist injury in his arguments about a different alleged disability and included documents in the record provided to the APDRB which had "vague references" to the wrist fracture and plantar fasciitis. See Wollman v. United States, 108 Fed. Cl. at 674.

Since Mr. Barna arguably placed his allegation that defendant breached the terms of the Pre-Trial Agreement by including at least the UCMJ Article 86 charge in the Non-Judicial Punishment, the court turns to the merits of his argument that the BCNR improperly failed to recognize the breach and, therefore, whether, the Pre-Trial Agreement should be found invalid. Paragraph 9 of the Pre-Trial Agreement, which contains the provision plaintiff alleges was violated by the inclusion of the UCMJ Article 86 and 92 charges in the Non-Judicial Punishment, states, in full:

> 9. I understand that in return for my plea of guilty, the convening authority agrees to refer the charges and specifications to which I will plead guilty to nonjudicial punishment. I understand and agree that, in return for my accepting NJP, the convening authority will withdraw the charges and specifications from court martial. After the announcement of the punishment by the non-judicial punishment officer, the withdrawn charges and specifications will be dismissed by the convening authority with prejudice.

Paragraph 9, thus, lays out the agreement and respective obligations of the parties under the Pre-Trial Agreement. Mr. Barna agreed to plead guilty to and accept Non-Judicial Punishment for the charges specified in paragraph 8 of the Pre-Trial Agreement, which immediately precedes paragraph 9 and begins "I will plead as follows," followed by a list

of charges and either a "Guilty" or "Not Guilty." The only charge which was followed by a "Guilty" in paragraph 8 was for a violation of UCMJ Article 111. In return, the defendant promised to refer the charges and specifications to which Mr. Barna agreed to plead guilty to in paragraph 8 to Non-Judicial Punishment and withdraw those charges from the currently pending court-martial. Essentially the same agreement and obligations were imposed on the parties by paragraph 1 of the Pre-Trial Agreement, which states:

> 1. For good consideration and after consultation with my defense counsel, I agree to enter a plea of <u>GUILTY</u> to the charges and specifications listed below at NONJUDICIAL PUNISHMENT, provided the convening authority agrees to withdraw the charges and specifications made against me at a pending special court-martial.

(capitalization and emphasis in original). The government had no obligation under either of these provisions in the Pre-Trial Agreement to limit the charges covered by the Non-Judicial Punishment only to those to which Mr. Barna had agreed to plead guilty. Indeed, such an interpretation would re-write paragraph 9 from "the convening authority agrees to refer the charges and specifications to which I will plead guilty to nonjudicial punishment" to read "the convening authority agrees to refer [only] the charges and specifications to which I will plead guilty to nonjudicial punishment." That there could be no source outside of the contract creating such a new obligation for the government to refer only the charges contained in the Pre-Trial Agreement to Non-Judicial Punishment was made clear by paragraph 12 of the Pre-Trial Agreement, which stated:

> 12. This Agreement constitutes all the conditions and understandings of both the Government and myself regarding the pleas and sentence limitations in this case. There are no other agreements, oral or written, expressed or implied, between myself and the convening authority or any other representative of the government.

In support of its argument, plaintiff also points to paragraph 11 of the Pre-Trial Agreement, which states, in full:

> 11. It is expressly understood that I will not commit any act of misconduct chargeable under the Uniform Code of Military Justice between the date both parties have signed this agreement and the date of nonjudicial punishment. Any act or misconduct on my part after both parties have signed this agreement and before the date of nonjudicial punishment will be grounds for withdrawal from this agreement by the convening authority.

Plaintiff argues that this language indicates that "the intent of the PTA was not to proceed to NJP with any charge other than the referred violation of Article 111, UCMJ." Paragraph 11 imposes a specific additional obligation on Mr. Barna, not to commit any additional misconduct chargeable under the UCMJ following the signature of the parties to the Pre-Trial Agreement, and provides defendant with the option to withdraw from the agreement should Mr. Barna do so. Paragraph 11 does not address misconduct which occurred prior to when both parties signed the Pre-Trial Agreement. Mr. Barna and his attorney signed

the Pre-Trial Agreement on September 2, 2010 and Col. Smith signed it on September 29, 2010. Both the UCMJ Article 86 and 92 charges included in the Non-Judicial Punishment concerned misconduct that took place before Col. Smith signed the Pre-Trial Agreement: the Article 86 charge was based on Mr. Barna's failure to report to his place of duty on September 2, 2010 and the Article 92 charge was based on Mr. Barna's failure to attend the full number of aftercare meetings he had been ordered to attend in August 2010. Neither charge was, therefore, precluded from further disciplinary action by the military by paragraph 11 of the Pre-Trial Agreement. The language of the Pre-Trial Agreement, thus, provides no support for plaintiff's argument.

Ultimately, the parties performed the obligations they agreed to under paragraph 9 of the Pre-Trial Agreement. On October 1, 2010, Mr. Barna accepted Non-Judicial Punishment for the charge for which he promised to plead guilty in paragraph 8 of the Pre-Trial Agreement, a violation of UCMJ Article 111. Plaintiff does not allege, and there is no evidence in the record, that defendant did not subsequently withdraw and dismiss the UCMJ Article 111 charge from the special court-martial. Although the Non-Judicial Punishment did include additional charges for violations of UCMJ Articles 89 and 92 that were not described in the Pre-Trial Agreement, Mr. Barna was under no obligation to agree to Non-Judicial Punishment for these two charges, which he did on October 1, 2011. By accepting the Non-Judicial Punishment, Mr. Barna avoided further disciplinary action based on these charges and anything more than the punishment he received under the Non-Judicial Punishment. Because the undisputed facts in the record show that the government fulfilled its obligations under the Pre-Trial Agreement, plaintiff's allegation that the government breached a material term of the Pre-Trial Agreement fails.

*Defendant's Alleged Violations of the JAGINST 5800.7e and Plaintiff's Right to an Administrative Separation Board*

Plaintiff makes two additional arguments in support of his allegation that the BCNR erred in failing to find that his discharge from the Marine Corps was unlawful: (1) that defendant violated JAGINST 5800.7E; and (2) that defendant violated plaintiff's right to an administrative separation board. Both arguments are contingent on a showing that the Pre-Trial Agreement was invalid.

The version of JAGINST 5800.7E, ¶ 0124.a in place during the period at issue stated, in relevant part:

When a person in the Naval service has been tried in a state or foreign court, whether convicted or acquitted, . . . military charges shall not be referred to a court-martial or be the subject of nonjudicial punishment proceedings for the same act or acts, except in those unusual cases where trial by court-martial or the imposition of nonjudicial punishment is considered essential in the interests of justice, discipline, and proper administration within the Naval service. Such unusual cases shall not be referred to trial by court-martial or be the subject of nonjudicial punishment proceedings without specific permission as provided below.

28

JAGINST 5800.7E, ¶ 0124.a (June 20, 2007). The "specific permission" to bring charges against service members who have already been tried state or foreign courts in the "unusual cases" mentioned in JAGINST 5800.7E, ¶ 0124.a must come from a command's General Court-Martial Convening Authority (GCMCA). See JAGINST 5800.7E, ¶ 0124.c(1). JAGINST 5800.7E, however, also makes clear that "[p]ermission of the GCMCA is not required for court-martial proceedings if the civilian adjudication or diversion occurs after the military charges have been referred to a court-martial." Id. The JAD advisory opinion, with which the BCNR "substantially concurred," found that, although Mr. Barna was subjected to Non-Judicial Punishment after his state court case was resolved, this was not a violation of 5800.7E, ¶ 0124.a because Mr. Barna's case was validly referred to a court-martial on August 10, 2010, over one month prior to the date Mr. Barna's state court case was resolved on September 23, 2010. The JAD advisory opinion reasoned as follows:

> [JAGINST 5800.7E] prohibits referral of charges or NJP after state trial as a matter of comity with state courts. Accordingly, if a state trial occurred prior to referral for charges or initiation of NJP proceedings, a CA [convening authority] would have to comply with the policy and procedures of 0124 of [JAGINST 5800.7E]. However, if referral of a case to court-martial occurs *before* state trial, as here, the case may be resolved in any manner applicable to cases not subject to state trial. The alternative interpretation– that a contested trial or guilty plea at court-martial could proceed, but not NJP–is an absurdity. The result would be that every plea deal based on cases referred prior to state trial would have to result in an additional, federal conviction, rather than administrative proceedings. Such a result would subvert the very policy of comity underling the regulation. The correct interpretation allows that a court-martial that may be properly conducted, may also be resolved in any of the normally authorized manners, including a NJP deal. Therefore, per applicable regulations the commander could impose and Applicant [Barna] could accept NJP pursuant to a PTA.

(emphasis in original).

Plaintiff does not challenge the validity of the JAD advisory opinion's interpretation of JAGINST 5800.7E in this court. Instead, in an apparent attempt to circumvent the JAD's conclusions, plaintiff argues that, "[s]ince the PTA was invalid, the charges brought to NJP on October 1, 2010 were essentially charges brought anew and therefore were in violation of the Manual of the Judge Advocate General (JAGMAN), JAGINST 5800.7E." Although his reasoning is less than clear, plaintiff's argument appears to be that, because his Pre-Trial Agreement was invalid, the October 1, 2010 Non-Judicial Punishment did not, as the JDA advisory opinion reasoned, represent the resolution of the case against him for violation of UCMJ Articles 107 and 111 that had been referred to a special court-martial on November 18, 2008. Instead, plaintiff appears to argue that initiation of the Non-Judicial Punishment constituted the beginning of a new case against him for the purposes of JAGINST 5800.7E. Plaintiff's argument, thus, appears to be premised on the invalidity of the Pre-Trial Agreement. This interpretation is bolstered by the title of the section in plaintiff's motion in which the argument is made: **"The invalid PTA meant the**

**NJP was in violation of Marine Corps policy.**" (emphasis in original). Because the court has determined that plaintiff has failed to demonstrate that the Pre-Trial Agreement was invalid, his subsequent argument that the Non-Judicial Punishment violated JAGISNT 5800.7E also must fail. Plaintiff, therefore, has failed to establish that the BCNR erred in failing to find that the imposition of Non-Judicial Punishment against plaintiff on October 10, 2010 violated JAGINST 5800.7E. Although the military exercised its discretion to proceed in Mr. Barna's case to Non-Judicial Punishment for violations of UCMJ Articles 86, 92 and 111, and the result was unfortunate for Mr. Barna, there was no violation of the applicable governing regulations.

With regard to plaintiff's administrative separation board argument, he recognizes that he expressly agreed in paragraph 10 of the Pre-Trial Agreement to "waive any administrative discharge board, based on any act or omission reflected in the charges and specifications that [were] the subject of [the Pre-Trial] Agreement." Plaintiff, however, again argues that "[s]ince the PTA was no longer valid, Mr. Barna's waiver of right to administrative discharge board was also no longer valid. As such, Mr. Barna was entitled to the benefits conferred upon him both by the Constitution and the Marine Corps," including a hearing before administrative separation board. Because this argument also is, similarly, premised on the invalidity of the Pre-Trial Agreement, and the court has determined that the Pre-Trial Agreement was not invalidated, plaintiff's argument fails. Mr. Barna waived his right to a separation board pursuant to a valid Pre-Trial Agreement, and, therefore, the BCNR's failure to find that his discharge without hearing before such a board was unlawful was not in error.

The administrative record, thus, demonstrates that the BCNR's conclusion that Mr. Barna's discharge from the Marine Corps was lawful was not arbitrary, capricious, unsupported by evidence, or contrary to law. To the extent that plaintiff's allegation was based on defendant's alleged violation of RCM 707(a), which plaintiff failed to raise in a meaningful way before the BCNR, defendant's motion to dismiss plaintiff's claim for failure to state a claim is granted. To the extent that plaintiff's allegation was based on defendant's alleged violations of a material term of the Pre-Trial Agreement, JAGINST 5800.7E and plaintiff's right to an Administrative Separation Board, defendant's motion for judgment on the administrative record is granted, and plaintiff's cross-motion for judgment on the administrative record is denied.

## The BCNR's Findings Regarding Mr. Barna's Promotion Claim

As part of his first cause of action, plaintiff also alleges that the BCNR's denial of his request for a retroactive promotion to Staff Sergeant (plaintiff's promotion claim), was arbitrary, capricious, unsupported by evidence, and contrary to law. In particular, Mr. Barna argues that the BCNR erred in accepting the conclusion in the JAD advisory opinion that Mr. Barna did not warrant his promotion to Staff Sergeant under Marine Corps Order (MCO) P1400.32D, paragraph 1204.4(r). Defendant moves to have Mr. Barna's claims related to his promotion to Staff Sergeant either dismissed for failure to state a claim or, in the alternative, for judgment on the administrative record in favor of defendant.

Promotions of enlisted marines are governed by MCO P1400.32D, titled "MARINE CORPS PROMOTION MANUAL, VOLUME 2, ENLISTED PROMOTIONS" (the MARCORPROMAN) (capitalization in original). Defendant has provided the portions of the version of the MARCORPROMAN, dated May 11, 2006, relevant to the facts of this case. The portion of the MARCORPROMAN governing remedial considerations for promotion and the role of the ERSB states, in relevant part:

> 3600. <u>GENERAL</u>. Marines are not penalized if not considered by a regularly convened selection board when eligible. They are remedially considered and, if recommended, assigned the DOR and effective date along with their contemporaries and, if due, receive pay and allowances from the effective date of promotion. . . .
>
> 3601. <u>ENLISTED REMEDIAL SELECTION BOARD</u>
>
> 1. The Enlisted Remedial Selection Board (ERSB) is charged with the review of all Marine enlisted records referred to it for the purpose of making recommendations concerning remedial promotion to SNCO [staff non-commissioned officer] grades (USMC and USMCR).
>
> 2. The CMC stipulates that the same criteria and selection procedures that regularly scheduled selection boards are instructed to follow are followed by the ERSB in their deliberations. However, where regularly scheduled selection boards are tasked with selecting the "best and fully qualified" Marines; remedial boards are tasked with selecting "fully qualified" Marines, as allocation restrictions are not applicable. . . . The ERSB is guided by the ERSB precept and the precepts used during the regularly convened selection board for which remedial consideration has been granted. Additionally, the ERSB is prohibited from considering material (i.e., fitness reports, commendatory/adverse material) regarding events occurring after the regularly convened selection board for which remedial promotion consideration has been granted.
>
> 3602. <u>ELIGIBILITY</u>
>
> 1. Remedial consideration for promotion is granted on a case-by-case basis, with consistency and fairness in mind. The decision to forward a request for remedial consideration to the ERSB will be made based upon the merits of the individual request and the timeliness of submission. Only those cases determined to fall within the spirit and intent of the CMC's policies as outlined in this chapter will be forwarded to the ERSB for adjudication. Additionally, only cases of Marines who were, or should have been, in the above zone or the promotion zone of a regularly scheduled promotion board will be referred to an ERSB.

MARCORPROMMAN, paras. 3600-02 (emphasis and capitalization in original).

MARCORPROMMAN, paragraph 1204.4(r), the provision cited in the JAD advisory opinion in support of its conclusion that Mr. Barna was ineligible for a promotion, is part of a larger section titled "<u>PROMOTION RESTRICTIONS</u>." (emphasis and capitalization in original). MARCORPROMMAN, para. 1204. Paragraph 1204.4 states, in relevant part:

4. <u>Marines will not be promoted while in any of the following categories</u>:

* * *

k. In a probationary status as a result of NJP under the authority of the UCMJ, Article 15, where any portion of the punishment is suspended. Commanders may partially waive this restriction, in the cases of exceptionally well-qualified Marines in the grades of Pvt and PFC, 3 months after the date of conviction.

* * *

r. Within 6 months of conviction by civil authorities (foreign or domestic), or action taken which is tantamount to a finding of guilt, i.e. a plea of no contest, for an offense which is considered a misdemeanor, other than minor traffic violations, in the civil jurisdiction. This restriction will apply to any traffic violation that is considered a misdemeanor and is punishable by law, i.e. reckless driving. Commanders are required to submit copies of court documentation evidencing the nature and degree of the offense, i.e. misdemeanor, felony, etc.

* * *

u. Marines pending administrative separation for misconduct, unsatisfactory participation in the reserve component, homosexual conduct, unsatisfactory performance, alcohol rehabilitation failure, domestic violence, child abuse, weight control failure, etc. are not eligible for selection consideration or promotion. The loss of promotion eligibility begins the date the administrative separation package is signed by the commander for forwarding to the General Court-Martial Convening Authority for final disposition.

MARCORPROMAN, paras. 1204.4(k), (r), (u) (emphasis in original).

Mr. Barna argues that MARCORPROMAN, paragraph 1204.4(r) applies only to "individuals currently being considered by a regular selection board, or individuals who have been selected for promotion, but have not yet been placed on the promotion list" and not to retroactive promotions based on selection by an ERSB. In support of his argument, plaintiff quotes the following portion of MARCORPROMAN, paragraph 3601.2: "[T]he ERSB is *prohibited* from considering material (i.e., fitness reports, commendatory/*adverse material*) *regarding events occurring after the regularly convened selection board* for which remedial promotion consideration has been granted." (emphasis added by plaintiff). Plaintiff argues that that this provision prohibited the ERSB from

reviewing any adverse material regarding a Marine that occurred after a regularly scheduled board. According to plaintiff, because he was selected to participate in the MECEP program, he was promoted to Staff Sergeant automatically in 2008, rather than competitively considered for a promotion as he otherwise would have been. Therefore, plaintiff argues that it would have been an error for the ERSB to consider any misconduct, such as his DUI arrest, which occurred after he first became qualified to be fully promoted to the rank of Staff Sergeant in 2008.

First, defendant argues that plaintiff has failed to state a claim because, under the facts stated in the amended complaint, Mr. Barna was legally ineligible to receive a promotion to Staff Sergeant from the ERSB under the criteria of not only MARCORPROMMAN, paragraph 1204.4(r), but also under MARCORPROMMAN, paragraphs 1204.4(k) and 1204.4 (u). Defendant argues, in the alternative, that defendant is entitled to judgment on the administrative record because, while Mr. Barna was ineligible to be promoted by the ERSB, the BCNR was empowered to grant such relief, but duly considered and rejected plaintiff's request. According to defendant, the BCNR correctly rejected Mr. Barna's claim "because both his ERSB application and mistaken inclusion on the promotion list occurred within six month of his reckless driving guilty plea" in violation of MARCORPROMMAN, paragraph 1204.4(r).

Regarding defendant's motion to dismiss for failure to state a claim upon which relief can be granted, plaintiff does not dispute defendant's assertion that, under the facts stated in the amended complaint, plaintiff met the criteria of MARCORPROMMAN, paragraphs 1204.4(k), 1204.4(r) and 1204.4(u) at the time he applied and was recommended for promotion to Staff Sargent by the ERSB. Nor could he. In his amended complaint, plaintiff states that he applied for consideration for promotion before the ERSB on or about October 29, 2010 and that the ERSB recommendation that he be promoted to Staff Sergeant was approved by the Commandant of the Marine Corps on December 13, 2010. Review of the October 1, 2010 Non-Judicial Punishment form, which plaintiff references in his amended complaint, demonstrates that a portion of his punishment was suspended for six months, through March 2011, meaning he was "[i]n a probationary status" under the terms of MARCORPROMMAN, paragraph 1204.4(k) at the time the ERSB recommended his promotion. Next, plaintiff admits in the amended complaint that he pled guilty to a civilian reckless driving charge on September 23, 2010, meaning his promotion to Staff Sergeant would have been within "[w]ithin 6 months of conviction by civil authorities," as forbidden by MARCORPROMMAN, paragraph 1204.4(r). Indeed, MARCORPROMMAN, paragraph 1204.4(r) specifically states that it is applicable to the very charge that plaintiff pled guilty to, reckless driving. Finally, plaintiff states in his amended complaint that Col. Smith signed and forwarded her recommendation that Mr. Barna be separated on October 15, 2010, meaning that he was not eligible for promotion from that time on under the terms of MARCORPROMMAN, paragraph 1204.4(r).

Instead of challenging these undisputed facts, plaintiff appears to argue that the provisions of MARCORPROMMAN, paragraph 1204.4 are inapplicable to Marines promoted pursuant to a recommendation of the ERSB. The language of MARCORPROMMAN, paragraph 1204.4, however, makes no distinction between Marines promoted by regular promotion boards and Marines, such as Mr. Barna,

promoted after a recommendation by the ERSB, stating globally that "<u>Marines will not be promoted while in any of the following categories</u>." (emphasis in original). Further, although, as defendant points out, the ERSB is "prohibited from considering material . . . regarding events occurring after the regularly convened selection board for which remedial promotion consideration has been granted," MARCORPROMMAN, paragraph 3601.2, the ERSB ultimately only makes "recommendations concerning remedial promotion." MARCORPROMMAN, para. 3601.1. The promotions recommended by the ERSB are not actually effected until certified by the relevant commander pursuant to procedures laid out in MARCORPROMAN, paragraph 1200.4(c). Plaintiff provides no explanation as to why a commander would not be bound to follow the requirements of MARCORPROMMAN, paragraph 1204 for Marines recommended for promotion by the ERSB, but would be for Marines recommended for promotion by a regular promotion board, nor is one apparent to the court. Indeed, there is evidence that MARCORPROMMAN, paragraph 1204.4 was intended specifically to provide guidance to commanders in effecting promotions. MARCORPROMMAN, paragraph 1204.3, states:

> Promotion restrictions are not punitive in nature and should not be used as such; <u>they are intended to allow commanders</u> a minimum period of time to observe a Marine whose conduct or performance has given the commander and/or the Commandant of the Marine Corps (CMC) reason to doubt whether the Marine is ready to assume the duties and responsibilities of the next higher grade.

(emphasis added). Because MARCORPROMMAN, paragraph 1204 was applicable to Mr. Barna at the time he was recommended by the ERSB for a promotion to Staff Sergeant, under the facts pled in the amended complaint, plaintiff was legally ineligible to receive such a promotion. With regard to plaintiff's allegations that the BCNR erred in its findings related to his promotion claim, therefore, defendant's motion to dismiss for failure to state a claim is granted and plaintiff's motion for judgment on the administrative record is denied.[6]

---

[6] In support of his claim, plaintiff also cites MCO 54201.16D, paragraph 4(c)(7) for the proposition that the ERSB is "to consider the conduct and character of the Marine at the time he was originally eligible for consideration by a regularly convened selection board." MCO 54201.16D, a copy of which plaintiff has provided to the court, is titled "ENLISTED REMEDIAL SELECTION BOARD (ERSB)," (capitalization in original), dated November 2, 2008, and states that its purpose is to "update[ ] information, guidance, and assign[ ] responsibilities concerning the operation and functioning of the Enlisted Remedial Selection Board (ERSB)." MCO 5420.16D, para. 1. Paragraph 4(c)(7) of MCO 5420.16D states, in full:

> The ERSB will consider the cases of enlisted Marines both Regular and Reserve, who, for any reason other than ineligibility, did not receive consideration or were not properly considered, when they were eligible for

**Mr. Barna's Claims for Staff Sergeant Pay and Separation Pay**

Plaintiff also alleges causes of action for back pay as a Staff Sergeant and for separation pay. These two cause of action are made in the alternative to each other. Regarding the back pay claim, plaintiff alleges that he is entitled to $286,533.79 in pay at the rank of Staff Sergeant from November 2010, when, he alleges, his pay was administratively reduced, through what was the date of his End of Active Service on May 23, 2012. Because the court has found that plaintiff has failed to show that the BCNR erred in finding that he was lawfully discharged from the Marine Corps and that the military did not err when Mr. Barna was not promoted to Staff Sergeant, this claim fails.

As to his claim for separation pay, plaintiff alleges that he is entitled to separation pay, as calculated according to the Marine Corps Separation and Retirement Manual (the SEPMAN). As plaintiff concedes in his amended complaint, however, under the terms of the SEPMAN, Marines "separated under Other Than Honorable conditions or by reason of misconduct . . . are not eligible for separation pay." SEPMAN 1309(l) (dated June 6, 2007).[7] Although Mr. Barna's Department of Defense Form 214 states that Mr. Barna was given an honorable discharge, it also states that the "NARRATIVE REASON FOR [Mr. Barna's] SEPARATION" was "MISCONDUCT." (capitalization in original). Because the court has found that plaintiff's discharge by reason of misconduct was not in error, plaintiff's claim for separation pay also fails. With regard to plaintiff's second and fourth causes of action, therefore, defendant's motion for judgment on the administrative record is granted and plaintiff's cross-motion for judgment on the administrative record is denied.

**Mr. Barna's Claim for Compensation for Unused Leave**

Finally, Mr. Barna also alleges that because he was honorably discharged from the Marines he is entitled to "$6,102.00 for sixty days of unused accumulated leave" under 37 U.S.C. § 501 (2012). In his amended complaint, Mr. Barna alleges that because his Department of Defense Form 214 states that his reason for separation was misconduct he was "precluded from selling his leave." Defendant concedes that Mr. Barna is entitled to payment for his unused leave and denies that he has been "precluded" from selling the leave. Defendant offers that plaintiff can obtain his payment by submitting Department of

---

consideration by a regularly convened Headquarters, U.S. Marine Corps Staff Noncommissioned Officer Selection Board.

This provision does not, as plaintiff argues, provide guidance as to the time period for which the ERSB is to consider a Marine's conduct and character in recommending promotions. Instead, the plain language of the provision makes clear that it is defining the service members "who" the ERSB is empowered to consider for promotion recommendations, i.e., the class of people who are eligible to apply for and receive promotion recommendations from the ERSB.

[7] Defendant has provided the court with the relevant portions of the version of the SEPMAN dated June 6, 2007.

Defense Form 827 to an email address provided by defendant. Defendant, however, argues that plaintiff is entitled only to the value of his unused leave as a Sergeant and not as a Staff Sergeant. In his cross-motion, plaintiff states that he has submitted the Form 827 to the address provided by defendant. Plaintiff, however, states that, based on this form, he will only receive unused leave based on the rank of Sergeant. Plaintiff argues that, "[i]f this Court finds that Mr. Barna is entitled to be retroactively promoted to his appointed rank of Staff Sergeant, then Mr. Barna will still be owed the difference in the unused leave paid at the rank of Sergeant instead of Staff Sergeant."

According to 37 U.S.C. § 501(b)(1):

A member of the Army, Navy, Air Force, Marine Corps, Coast Guard, or National Oceanic and Atmospheric Administration, who has accrued leave to his credit at the time of his discharge, is entitled to be paid in cash or by a check on the Treasurer of the United States for such leave on the basis of the basic pay to which he was entitled on the date of discharge.

For the purposes of 37 U.S.C. § 501, "discharge" is defined as: "in the case of an enlisted member, separation or release from active duty under honorable conditions, termination of an enlistment in conjunction with the commencement of a successive enlistment (without regard to the date of the expiration of the term of the enlistment being terminated), or appointment as an officer." 37 U.S.C. § 501(a)(1). A service member who is discharged under less than honorable conditions "forfeits all accrued leave to his credit at the time of his discharge." 37 U.S.C. § 501(e)(1). The number of days of accrued leave upon which payment may be made is limited to sixty. See 37 U.S.C. § 501(f).

Plaintiff was honorably discharged and, as such, as defendant has acknowledged, he is entitled to be paid for his accrued leave. Plaintiff's notice of discharge reveals his unused leave was sixty-four and one-half days. He, therefore, is entitled to receive payment for the statutory maximum of sixty days of accrued leave. See 37 U.S.C. §§ 501(b)(1), 501(f). Because the court has found that plaintiff is not entitled to a retroactive promotion to Staff Sergeant, he is entitled only to payment on the basis of the basic pay he was entitled to on the date of his discharge as a Sergeant. Plaintiff's motion for judgement on the administrative record, therefore, is granted, in part. Plaintiff is entitled to compensation for sixty days of accrued leave at the rank of Sergeant.

## CONCLUSION

The court recognizes Mr. Barna's contributions and service to his country, including his three combat tours. His error in judgment on February 3, 2010, however, has resulted in unfortunate, major, consequences to his military career. After reviewing the record before the court, it appears that the military acted within its authority regarding Mr. Barna's punishment proceedings and discharge. With regard to plaintiff's discharge claim, to the extent that plaintiff's allegation was based on defendant's alleged violation of RCM 707(a), defendant's motion to dismiss plaintiff's first cause of action is **GRANTED** and plaintiff's cross-motion is **DENIED**, and, to the extent that plaintiff's allegation was based on defendant's alleged violations of a material term of the Pre-Trial Agreement,

JAGINST 5800.7E and plaintiff's right to an Administrative Separation Board, defendant's motion for judgment on the administrative record is **GRANTED** and plaintiff's cross-motion is **DENIED**. With regard to plaintiff's promotion claim, defendant's motion to dismiss plaintiff's first cause of action is **GRANTED** and plaintiff's cross-motion is **DENIED**. With regard to plaintiff's second cause of action, for Staff Sergeant pay, and plaintiff's fourth cause of action, for separation pay, defendant's motion for judgment on the administrative record is **GRANTED** and plaintiff's cross-motion is **DENIED**. With regard to plaintiff's third cause of action, for compensation for unused leave, plaintiff's motion for judgment on the administrative record is **GRANTED** in part. Plaintiff is entitled to compensation for sixty days of accrued leave at the rank of Sergeant, to be computed and paid by the United States in accordance with the application submitted by the plaintiff to defendant in accordance with defendant's existing rules and regulations for submission of such claims. The Clerk's Office is directed to enter **JUDGMENT** in accordance with this opinion dismissing plaintiff's complaint.

      **IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**
